# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

HECTOR ABRAHAM COTA HIGUERA,

    Petitioner,

v.                                               No. 1:22-cv-0551 KWR/DLM
                                                  1:19-cr-3103 KWR/SMV

UNITED STATES OF AMERICA,

    Respondent.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Petitioner Hector Abraham Cota Higuera's pro se motion and supporting memorandum under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody (Doc. 1), filed July 25, 2022; Respondent United States' response in opposition (Doc. 11), filed May 1, 2023; Petitioner's supplemental brief by counsel[1] in support of his motion (Doc. 24), filed September 6, 2024; Respondent's response to Petitioner's supplemental brief (Doc. 27), filed October 18, 2024; Petitioner's second supplemental brief (Doc. 43), and Respondent's supplemental brief (Doc. 42), both filed on February 20, 2025.

United States District Judge Kea W. Riggs referred this matter to the undersigned to make proposed findings and recommend a disposition. (Doc. 10.) After considering the parties' filings, the testimony of the witnesses and evidence admitted at the evidentiary hearing, the parties' oral argument, and the relevant law, the undersigned **RECOMMENDS** that the motion be **DENIED**.

---

[1] The Court appointed Criminal Justice Act Panel Attorney Scott Moran Davidson to represent Higuera on April 22, 2024. (Doc. 14.)

**I.       Factual and Procedural Background**[2]

Higuera is incarcerated at the Federal Correctional Institution in Victorville, California. (Doc. 1 at 1.) On June 28, 2021, without a plea agreement, Higuera pled guilty to five counts of a seven-count indictment:

- 21 U.S.C. § 846, conspiracy (Count 1);
- 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), possession with intent to distribute 1 kilogram and more of heroin (Count 2);
- 18 U.S.C. §§ 922(g)(5) and 924, a prohibited person in possession of a firearm and ammunition (Count 4);
- 18 U.S.C. §§ 922(k) and 924, possession of a firearm with an obliterated serial number (Count 5); and
- 18 U.S.C. § 924(c)(1)(A)(i), using and carrying a firearm during and in relation to a drug trafficking crime, and possessing a firearm in furtherance of such crime (Count 6).

(CR Doc. 136.) The Court sentenced Higuera to a total term of 180 months (15 years) of imprisonment with 120 months (10 years) for Counts 1 and 2; 60 concurrent months (5 years) for Count 4; 36 concurrent months (3 years) for Count 5; and 60 consecutive months (5 years) as to Count 6 on December 8, 2021. (CR Doc. 136.)

The deadline for filing a notice of appeal after Higuera's criminal sentencing was December 22, 2021. *See* Fed. R. App. P. 4(b)(1)(A)(i) ("[A] defendant's notice of appeal must be filed in the district court within 14 days [after entry of the judgment.]"). Higuera's attorney at the time of sentencing, Gregory Acton, did not file a notice of appeal. (Doc. 24 at 2.) Instead, Higuera

---

[2] Documents referenced as "Doc. ___" are filed in case number 22-cv-0551. Documents referenced as "CR Doc. ___" are filed in case number 19-cr-3103.

filed a pro se notice of appeal on March 4, 2022, 72 days after the deadline to file the notice of appeal had passed. (*See* CR Doc. 137.) Prior to filing this notice, Higuera did not request an extension of time to file, and his opportunity to do so has expired. *See* Fed. R. App. P. 4(b)(4) ("The district court may . . . extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this [Rule].").

On July 25, 2022, Higuera filed this action pursuant to 28 U.S.C. § 2255 and asks the Court to find Acton ineffective for failing to file a notice of appeal. (Doc. 1.) The Government responded by arguing that Higuera received effective assistance of counsel and requesting the Court hold an evidentiary hearing. (*See* Docs. 11; 27.) The Court held an evidentiary hearing on January 13, 2025. (Doc. 38.) Two witnesses testified at this hearing: Gregory Acton and Hector Abraham Cota Higuera. (*See id.*) Fifteen exhibits were entered into evidence. (Tr. 5:1.)[3]

At the January 13, 2025 hearing on his Section 2255 motion, the Court heard testimony and accepted evidence on the following four issues: (1) whether Higuera requested Acton file an appeal; (2) whether Acton informed Higuera of the deadlines for filing an appeal; (3) whether Acton provided Higuera with a copy of the written judgment; and (4) Acton's reason(s) for not filing a notice of appeal. (*See* Doc. 38.) Higuera testified, through a Spanish-speaking interpreter, that he completed one year of middle school, does not speak English, and that all his communications with Acton were in Spanish. (Tr. 84:21–85:8.) Higuera described Acton's level of Spanish proficiency as "rough" and that Acton did not speak Spanish very well. (Tr. 87:13–18.) Higuera qualified this assessment though by stating that he usually communicated with Acton through a translator and only once did Acton communicate with him directly in Spanish. (Tr. 85:9–21.) Higuera later testified that Acton spoke to him directly in Spanish twice, once prior to his

---

[3] The Court cites to the official court reporter's transcript, which the Court will attach as Exhibit A to this PFRD.

3

change of plea hearing and then immediately after sentencing. (Tr. 111:6–14.) Higuera described being "shocked" by the 15-year sentence he received and alleged that Acton did not explain that he would be sentenced according to the mandatory minimums. In fact, Higuera testified he did not understand what a mandatory minimum sentence meant. (Tr. 88:6–19.)

Higuera recounted the brief conversation he had with Acton at the conclusion of the sentencing hearing, in which Acton told him he had 14 days to appeal the sentence. (Tr. 85:22–86:16.) Higuera testified that he told Acton, "[o]f course I'm going to appeal." (Tr. 86:15–16.) Higuera explained that he did not know when to start counting the 14 days and that this post-sentencing conversation was the first time Acton said anything to him about the appellate process. (Tr. 89:15–90:6.) But Higuera also confirmed that he never asked Acton when to start counting the 14 days. (Tr. 120:19–21.) According to Higuera, in the post-sentencing conversation with Acton, Acton told him that Acton, the prosecutor, and the sentencing judge "had made an agreement that [Higuera] was going to file an appeal." (Tr. 111:19–112:7.) On cross examination, Higuera described the judge as telling him he had the right to appeal but not saying anything about a purported agreement to appeal, and Higuera acknowledged that he never saw any documents reflecting a purported agreement. (Tr. 113:18–114:12.)

Higuera testified that his reasons for wanting to appeal were because Acton "didn't help [him] at all" and because of the length of his sentence. (Tr. 107:8–108:1.) But Higuera later testified that he only wanted to appeal Acton's lack of advocacy and not the length of his sentence. (Tr. 132:12–23.) Higuera testified that he felt Acton did nothing to help him for two reasons: (1) because the sentencing judge asked Acton if he had anything to say on Higuera's behalf and Acton said no; and (2) because Acton did not provide him with any documents. (Tr. 133:22–135:4.)

4

Acton has been a practicing attorney since 1995 and a criminal defense attorney since 2008 or 2009. (Tr. 31:4–8.) He testified that he has been counsel in approximately 600 criminal cases and has conducted approximately 40 criminal appeals. (Tr. 31:9–18.) Acton testified that he filed a three-page sentencing memorandum prior to Higuera's sentencing. (Tr. 12:9–10.) Acton explained that he did not always discuss upcoming hearings in advance with Higuera, nor did he send every court document to Higuera, regardless of the document's importance. (Tr. 12:11–16, 13:6-19.) According to Acton, he could not recall the specific meetings he had with Higuera prior to sentencing. (Tr. 13:16–14:4.)

Acton stated that the entire post-sentencing conversation lasted approximately three minutes, and during that time, Higuera did not respond to anything he said. (Tr. 53:5–19, 54:3–12.) Acton testified that he did not explain to Higuera the difference between the oral pronouncement of sentence and the written judgment of sentence. (Tr. 15:11–19.) Instead, Acton told Higuera he had 14 days to file a notice of appeal but did not give Higuera a specific due date on the calendar. (Tr. 15:20–16:5.) Acton also briefly discussed the lack of merit an appeal would have with Higuera post-sentencing, but he did not file an *Anders* brief[4] with the Tenth Circuit. (Tr. 20:15–21:8.) He did not recall going over the advantages of filing an appeal with Higuera. (Tr. 21:9–11.) Acton admitted that the 14-day window to file an appeal does not always begin on the date of sentencing. (Tr. 19:19–23.) Acton also admitted that Higuera would have no way of calculating the deadline for filing a notice of appeal because Acton never sent Higuera the court's written judgment. (Tr. 20:5–7.) Acton testified that he said nothing regarding sending Higuera a copy of the written judgment, and he reiterated that Higuera did not tell him one way or the other

---

[4] When a federal defendant believes they have a meritorious appeal but counsel disagrees, counsel may file an *Anders* brief with the Tenth Circuit so they may decide whether an appeal would be meritorious. *See Anders v. California*, 386 U.S. 738 (1967).

5

whether he wanted to appeal. (Tr. 16:23–17:24.) Because of this, Acton did not know whether Higuera wanted to file an appeal. (Tr. 17:25–18:4.)

Acton testified that once a case is over, his practice is to disregard any PACER notifications from a court. (Tr. 24:15–25:5.) Acton also stated that his practice is to never file protective notices of appeal. (Tr. 29:16–25.) Acton testified that after sentencing, he never called or wrote Higuera to determine his wishes regarding filing an appeal. (Tr. 25:14–21.) Instead, Acton testified that because Higuera used an intermediary one time to contact Acton, Acton presumed that this was a viable way for Higuera to get in touch with him. (Tr. 52:15–53:4.)

Acton testified that he is fluent in Spanish. (Tr. 38:9–39:18.) Acton described his practice of translating court documents on the fly, like the presentencing report, directly to his client, which he admitted is challenging. (Tr. 40:7–14.) Acton also admitted that he had issues communicating with Higuera in Spanish and struggled to understand Higuera's Spanish. (Tr. 44:10–21.)

On January 14, 2025, the Court ordered supplemental briefing on the issues argued and the evidence put forth at the evidentiary hearing. (Doc. 39.) The Government and Higuera filed their supplemental briefs on February 20, 2025. (Docs. 42–43.)

## II.     Legal Standard to Obtain Habeas Relief Under 28 U.S.C. § 2255

An individual claiming that their sentence "was imposed in violation of the Constitution or laws of the United States" may move a court to vacate, set aside, or correct a sentence by filing a petition under 28 U.S.C. § 2255(a). To obtain habeas relief under Section 2255, a petitioner must demonstrate "an error of constitutional magnitude which had a substantial and injurious effect or influence on the verdict." *United States v. Johnson*, 995 F. Supp. 1259, 1261 (D. Kan. 1998) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). And a court must hold an evidentiary

hearing on a Section 2255 petition unless the motions, files, and records conclusively show that the prisoner is not entitled to any relief. 28 U.S.C. § 2255(b).

### III.     Law Regarding Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court held that criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance and established a two-part test to prove ineffective assistance of counsel: a defendant claiming ineffective assistance of counsel must show that (1) counsel's representation was objectively unreasonable, and (2) counsel's deficient performance prejudiced the defendant. 466 U.S. 668, 687–88, 694 (1984). Put another way, "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000). The Supreme Court added that "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel . . . ." *Strickland*, 466 U.S. at 688–89. Rather, courts must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" and "judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689–90. The reasonableness of counsel's performance must be evaluated "considering all the circumstances." *Id.* at 688. The Supreme Court later expanded the application of this test to include situations, like here, where a defendant claims ineffective assistance of counsel for the failure to file a notice of appeal. *Flores-Ortega*, 528 U.S. at 477.

To establish ineffective assistance of counsel based on a failure to file a notice of appeal, a court must begin by determining which of three mutually exclusive circumstances exist: (1) defendant made a specific request to file an appeal; (2) defendant explicitly told his attorney

7

not to file an appeal; or (3) defendant "neither instruct[ed] counsel to file an appeal nor ask[ed] that an appeal not be taken . . . ." *Id.* at 478.

First, if a defendant claims they made a specific request, and a court credits that claim, the inquiry ends because the defendant will have satisfied both parts of the *Strickland* test. *See Rodriquez v. United States*, 395 U.S. 327, 331–32 (1969); *cf. Peguero v. United States*, 526 U.S. 23, 28 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit."). This is so because the Supreme Court has "long held that a lawyer who disregards specific instructions from a defendant to file a notice of appeal is acting in a manner that is professionally unreasonable." *Flores-Ortega*, 528 U.S. at 477 (citations omitted). Conversely, the *Strickland* inquiry also ends if a court finds that a defendant explicitly told his attorney not to file an appeal. *Id.* (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (holding accused has ultimate authority to decide whether to take an appeal)).

Lastly, where a court finds that a defendant "neither instruct[ed] counsel to file an appeal nor ask[ed] that an appeal not be taken," a court must "first [ask] a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. . . . In making this determination, [the Court] must take into account all the information counsel knew or should have known." *Id.* at 478, 480 (citing *Strickland*, 466 U.S. at 690). For example, "[a]lthough not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a . . . guilty plea . . . ." *Id.* at 480. But even where a defendant pleads guilty, a court must still consider factors such as "whether the plea expressly reserved or waived some or all appeal rights." *Id.* If a defendant can show that counsel did not consult with them regarding an appeal, then a court's inquiry moves to the second prong of the *Strickland* test: whether counsel's deficient performance prejudiced the defendant. *See Strickland*, 466 U.S. at 687. To establish the defendant was

8

prejudiced by counsel's deficient performance, a defendant must show "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484. This is a factual question. *See id*. at 485. "[E]vidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Id*. Conversely, a defendant's failure to show grounds for appeal does not end a court's inquiry, because the prejudice requirement can be satisfied by showing there may be other substantial reasons to believe a defendant would have appealed. *Id*. at 486. For example, the Supreme Court found in *Flores-Ortega* that "it is unfair to *require* an indigent, perhaps *pro se*, defendant to demonstrate that his hypothetical appeal might have had merit before any advocate has ever reviewed the record in his case in search of potentially meritorious grounds for appeal." *Id.* Rather, "the defendant [must] demonstrate that, but for counsel's deficient conduct, he would have appealed." *Id.*

**III.    Analysis**

   **A. Higuera's Request to File a Notice of Appeal**

Higuera, in his petition, his briefs in support, and his testimony at the evidentiary hearing, makes two contradictory claims: that he told Acton he wanted to appeal and that he never indicated whether or not he wanted to appeal. In his pro se petition, he states that he "requested to his counsel that he wanted to appeal his conviction" (Doc. 1 at 12 ¶ 1) and that counsel "never consulted" with him (*id.* at 4 ¶ 12(a)). Higuera's memorandum in support of his petition states that after sentencing, he advised counsel that he wanted to file an appeal. (*Id.* at 12–13 ¶¶ 1, 3.) His non-notarized "affidavit" repeats these claims. (*Id.* at 17.) In its first response brief, the Government argues that Higuera's claim that he specifically asked counsel to file a notice of appeal is not credible and is

9

contradicted by his repeated claims that counsel did not consult with him regarding filing an appeal. (Doc. 11 at 9–10.) In Higuera's supplemental brief, filed after counsel was appointed to represent him, he disavows his claim that he made a specific request to counsel to file a notice of appeal by stating that he "never had a reasonable opportunity to discuss his appeal with [counsel] or communicate with him about it." (Doc. 24 at 9.) But at the evidentiary hearing, Higuera testified that he told Acton he wanted to appeal. (Tr. 86:15–16.)

Where a defendant claims he has specifically requested an appeal, the defendant puts his credibility at issue. Here, Higuera provides inconsistent claims regarding whether he asked Acton to file a notice of appeal. The Court heard directly from Higuera at the evidentiary hearing, assessed his credibility, and does not credit his testimony that he directed Acton to file an appeal. At the hearing, Higuera gave conflicting answers as to the number of conversations he had in Spanish with Acton, what Acton did or did not do to represent him, what was said in open court by the sentencing judge, and his reasons for wanting to appeal. As a result of Higuera's inconsistent testimony, the undersigned finds he is not credible and recommends the Court deny the petition on this basis.

Because Higuera made conflicting statements, however, the undersigned will continue the *Strickland* analysis but does not endorse this approach. Instead, the undersigned recommends the Court follow the better practice of endings its analysis after disbelieving a petitioner made a specific request to appeal. To do otherwise would incentivize criminal defendants to blame their counsel for any failure to file a notice of appeal, thus giving them two bites at the apple: if their gambit succeeds, they are allowed to pursue their appeal; if it fails, then no harm no foul and the Court proceeds as if no specific request had been made.

B. **Counsel's Consultation was Constitutional**

Where a defendant neither asks for an appeal nor states they do not want to appeal, counsel must consult with the defendant about an appeal. *Flores-Ortega*, 528 U.S. at 478. "[T]he term 'consult' [means] advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. at 478. To determine whether counsel should have consulted with the defendant, "courts must take into account all the information counsel knew or **should have known**." *Id*. at 480 (citation omitted) (emphasis added). Where, as here, the defendant's "conviction follows a . . . guilty plea," this fact becomes "highly relevant . . . both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id*. Further, when a defendant has pled guilty, "the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id*. "Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal." *Id*. But *Flores-Ortega* also held that counsel has a "duty to consult with [a] defendant about an appeal when [counsel has] reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), *or* (2) that the particular defendant reasonably demonstrated to counsel that [they were] interested in appealing." *Id.* (emphasis added). Lastly, *Flores-Ortega* stated the expectation that "courts evaluating the reasonableness of counsel's performance using the inquiry we have described will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal." *Id.* at 481.

The question for the Court under this particular set of facts becomes, did Acton's post-sentencing conversation with Higuera fulfill his constitutional duty to consult with Higuera regarding an appeal? According to the Government, the answer is yes. (Doc. 42 at 5–7.) The undersigned agrees. Here, Acton told Higuera that any appeal would lack merit so that Higuera could make an informed decision.[5] (Tr. 20:15–21:8.) But the undersigned is disappointed that Acton felt he had no further responsibility to send Higuera the written judgment or follow up with Higuera upon receiving notification of activity in the case. Having said that, the undersigned does not find that a failure to take these two actions amounts to a lack of consultation.

Accordingly, the Court finds that Acton fulfilled his duty to consult with Higuera.

### C. Higuera was not Prejudiced even if Counsel's Performance Had Been Deficient

Having found that Acton had a duty to consult with Higuera about an appeal and that he fulfilled that duty, the Court need not but will next address whether Higuera was prejudiced by Acton's failure to file a notice of appeal. Thus, the question becomes: would Higuera have appealed? Higuera made multiple comments at his guilty plea hearing as to whether he would appeal his sentence:

- MR. HIGUERA: "Actually, I wasn't aware of all these things but I am aware of them now and actually what I want to do, if you know what I mean, is I want to restart my life. I am aware. I know that I committed a crime and I know that I have to pay for it but I just want to restart my life, start all over and follow a good road, you know." (Doc. 11-1 12:19–24.)

---

[5] Acton's post-sentencing conversation with Higuera was without the use of an interpreter, even though Higuera used an interpreter in all his proceedings before the Court. The undersigned strongly suggests that a better practice is to mimic the Court's handling of this issue, so where a defendant uses an interpreter for court proceedings, their counsel should also use an interpreter during client discussions.

12

- "[MR. HIGUERA]: That's fine. Okay, that's fine. Okay. I mean, yeah, I traveled to Espanola to distribute those drugs. I'm not going to make you wait for this any longer." (*Id.* 51:22–24.)

- "THE COURT: Yeah, Mr. Higuera, have we addressed your concerns? All the other facts that we've talked about, do you agree the Government could prove those beyond a reasonable doubt if this case went to trial? [MR. HIGUERA]: As I -- yes, I agree and as I stated before, I mean, I plead guilty. I am guilty for the actions -- for my actions." (*Id.* 52:24–53:5.)

- "THE COURT: Okay. Are you pleading guilty today because you are, in fact, guilty of the five crimes you've been charged with in the indictment? [MR. HIGUERA]: Yes." (*Id.* 53:17–20.)

The undersigned also notes that in sentencing Higuera on the drug counts and the Section 924(c) enhancement for use of a deadly weapon, the sentencing court was required to sentence Higuera to at least 15 years of imprisonment and had no discretion to alter this aspect of his sentence. *See* 18 U.S.C. §§ 841(a)(1) and (b)(1)(A); and 924(c). Because Higuera received the mandatory minimum sentence for these crimes, that is a further indication that he would not have desired to appeal his sentence.

Accordingly, the undersigned finds his guilty plea, along with his comments at the plea hearing, to be a clear indication that Higuera would ***not*** have timely appealed his case. *Flores-Ortega*, 528 U.S. at 480 ("[A] highly relevant factor in this inquiry will be whether the conviction follows a . . . guilty plea, [] because a guilty plea . . . may indicate that the defendant seeks an end to judicial proceedings.").

## VI. Conclusion

For the reasons discussed above, **IT IS HEREBY RECOMMENDED** that the Petition be **DENIED**.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE