IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HECTOR ABRAHAM COTA-HIGUERA,
        Petitioner,

vs.                                                        No. 22-cv-551 KWR-DLM
                                                               No. 19-cr-3103 KWR-SMV

UNITED STATES OF AMERICA,
        Respondent.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Petitioner Hector Abraham Cota Higuera's pro se[1] motion and supporting memorandum under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody, **doc. 1**, filed July 25, 2022. Judge Martínez held an evidentiary hearing and filed his Proposed Findings and Recommended Disposition (PFRD) in this matter on March 14, 2025. **Doc. 44.** Petitioner Hector Abraham Cota Higuera timely filed Objections (**Doc. 47**), and the Government responded. (**Doc. 48**). Having considered the applicable law, the PFRD, and the parties' briefings, the Court finds that Petitioner's Objections are **not well-taken** and therefore are **OVERRULED**. The Court adopts Judge Martínez's PFRD (**Doc. 44**) and denies Petitioner's Motion under § 2255. **Doc 1**.

## BACKGROUND

On June 28, 2021, without a plea agreement, Petitioner pled guilty to five counts of a seven-count indictment:

1. 21 U.S.C. § 846, conspiracy (Count 1);

2. 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), possession with intent to distribute 1 kilogram and more of heroin (Count 2);

---

[1] Petitioner is now represented by counsel. **Doc. 14**.

   3. 18 U.S.C. §§ 922(g)(5) and 924, a prohibited person in possession of a firearm and ammunition (Count 4);

   4. 18 U.S.C. §§ 922(k) and 924, possession of a firearm with an obliterated serial number (Count 5); and

   5. 18 U.S.C. § 924(c)(1)(A)(i), using and carrying a firearm during and in relation to a drug trafficking crime, and possessing a firearm in furtherance of such crime (Count 6).

**CR Doc. 136** (judgment as to Petitioner).[2]

Counts 1 and 2 carried a mandatory minimum term of imprisonment of 120 months, making Petitioner's guideline sentence 120 months, despite the sentencing guidelines' range on Counts 1, 2, 4, and 5 being 108 months. **CR Doc. 124 at ¶¶16, 50** (Presentence Investigation Report). Likewise, Count 6 carried a mandatory minimum sentence of 60 months to run consecutive to any other sentence. *Id.* **at ¶¶17, 49**. This resulted in Petitioner receiving an effective guideline minimum of 180 months. The PSR recommended a sentence within those guidelines. *Id.* **at ¶67**. Petitioner received a sentence of 180 months of imprisonment and the Court entered written judgment on December 8, 2021. **Doc. 136**.

Per the Federal Rules of Appellate Procedure, Petitioner had until December 22, 2021 to file his notice of appeal. *See* Fed. R. App. P. 4(b)(1)(A)(i) ("[A] defendant's notice of appeal must be filed in the district court within 14 days [after entry of the judgment.]"). Petitioner's attorney at the time of sentencing, Gregory Acton, did not file a notice of appeal or a request for an extension of time to file a notice of appeal. **Doc. 24 at 2.**

---

[2] This case arises from Petitioner's associated criminal case, No. 19-cr-3103 KWR/SMV. The Court will therefore cite to the criminal case's record with the prefix **CR**.

Petitioner filed a pro se notice of appeal on March 4, 2022.  **CR Doc. 137**.  Petitioner did not request an extension for time to file, and his opportunity to do so had expired.  *See* Fed. R. App. P. 4(b)(4) ("The district court may . . . extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this [Rule].").

Petitioner filed this action on July 25, 2022, requesting that the Court vacate his sentence as unconstitutional on the grounds that he had not received effective assistance of counsel from Mr. Acton.  **Doc. 1**.  The motion raised two related claims: that defense counsel never consulted with Petitioner about filing an appeal and that defense counsel failed to file an appeal after Petitioner asked him to at some point "after sentencing."  **Doc. 1 at 4–5, 12–13**.  Petitioner believed he had received an upward departure.  *Id.* **at 13**.  The Government argued that Petitioner did receive effective assistance of counsel and requested the Court hold an evidentiary hearing.  **Doc. 11**.

The Court held an evidentiary hearing on January 13, 2025.  **Doc. 38**.  The Court accepted fifteen exhibits, **tr. 5:1**,[3] and heard testimony Gregory Acton and Hector Abraham Cota Higuera. **Doc. 44-1**.  The Court heard testimony and accepted evidence on four issues:

1. Whether Petitioner requested Mr. Acton file an appeal;

2. Whether Mr. Acton informed Petitioner of the deadlines for filing an appeal;

3. Whether Mr. Acton provided Petitioner with a copy of the written judgment; and

4. Mr. Acton's reason(s) for not filing a notice of appeal.

**Doc. 44-1; Doc. 38.**

A. *Gregory Acton's Testimony*

The Court first heard testimony from Mr. Acton.  **Doc. 44-1**. Mr. Acton has been a practicing attorney since 1995 and a criminal defense attorney since 2008 or 2009. **Tr. 31:4–8**. He

---

[3] The Court cites to the official transcript, attached as exhibit A to the PFRD.  **Doc. 44-1**.

has been counsel in approximately 600 criminal cases and has conducted approximately 40 criminal appeals. **Tr. 31:9–18.**

At issue in this case was how well Mr. Acton advised Petitioner before and after sentencing proceedings. While he did not recall specific meetings with Petitioner prior to sentencing, **Tr. 13:16–14:4**, Mr. Acton testified that he believes he "would have" at least informed Petitioner that both parties recommended the mandatory minimum sentence of 180 months. **Tr. 80:7–19.** Mr. Acton's general practice has been to inform his client of the guideline sentences that both parties recommend. *Id*. However, he also explained that he did not always discuss upcoming hearings in advance with Petitioner,[4] nor did he send every court document to Petitioner, regardless of the document's importance. **Tr. 12:11–16, 13:6-19.**

However, after sentencing Mr. Acton spoke to Petitioner for roughly three minutes, but Petitioner never responded to Mr. Acton. **Tr. 53:5–54:12**. Mr. Acton believed it was because Petitioner was "just angry," especially given that he had previously moved to have Mr. Acton removed as counsel, but the Court had denied that motion. **Tr. 79:7–16**. During that conversation, Mr. Acton briefly discussed the disadvantages of an appeal but did not recall going over the advantages. **Tr. 21:9.** Mr. Acton informed his client that he would have 14 days to appeal, **Tr. 15:20–16:5; 53; Tr. 24:15-25:5**, but acknowledged Petitioner had no way to calculate the deadline because he never sent Petitioner the written judgment.[5] **Tr. 20:5–7**. Mr. Acton did not explain to Petitioner the difference between the oral pronouncement of sentence and the written judgment of sentence, or that the time to file an appeal began once the Court issued its written judgment. **Tr.**

---

[4] As discussed in greater detail below, Mr. Acton indeed testified that he has a longstanding practice of not sending his clients documents or checking CM-ECF where he cannot bill for it. **Tr. 24:15-25:5.**
[5] Notably, however, Mr. Acton did not tell Petitioner he would send him a copy of the written judgment and reiterated that Petitioner did not indicate whether he wanted to appeal. **Tr. 16:23–17:24. 11**.

4

**15:11–19.** Nor did he file an *Anders* brief with the Tenth Circuit because he believed Petitioner did not want to appeal. **Tr. 20:15–21:8**.

Also at issue were Mr. Acton's general case management practices. Once a case is over, Mr. Acton disregards any CM-ECF notifications because he cannot bill for that time and does not file protective notices of appeal. **Tr. 24:15–25:5; 29:16–25.** Following sentencing, Mr. Acton did not contact Petitioner to determine if Petitioner indeed wished to appeal. **Tr. 25:14–21**. However, Mr. Acton advised Petitioner that he needed to let him know if he wanted to file an appeal. **Tr. 52:15–53:4.**

Mr. Acton testified that he is fluent in Spanish. **Tr. 38:9–39:18.** However, he admitted he had issues communicating with Petitioner in Spanish and struggled to understand Petitioner's Spanish. **Tr. 44:10–21.** He described his practice of translating court documents in real time directly to his client, which he admitted is challenging. **Tr. 40:7–14.**

B. *Hector Cota-Higuera's Testimony*

The Court next heard from Petitioner. Petitioner testified that he completed one year of middle school, does not speak English, and that all his communications with Mr. Acton were in Spanish. **Tr. 84:21–85:8.** He described Mr. Acton's level of Spanish proficiency as "rough." **Tr. 87:13–18.** However, Petitioner also testified that he usually communicated with Mr. Acton through a translator and spoke in Spanish with Mr. Acton on two occasions. **Tr. 85:9– 21; Tr. 111:6–14.**

Petitioner described being "shocked" by the 15-year sentence he received and alleged that Mr. Acton did not explain that he would be sentenced according to the mandatory minimums. Indeed, Petitioner testified he did not understand what a mandatory minimum sentence meant at all. **Tr. 88:6–19.** Petitioner recounted the brief conversation he had with Mr. Acton following his sentencing hearing, in which Mr. Acton told him he had 14 days to appeal the sentence. **Tr. 85:22–**

5

**86:16**. Petitioner testified that he told Mr. Acton, "[o]f course I'm going to appeal," but did not overtly instruct Mr. Acton to begin that process. **Tr. 86:15–16.** Concerningly, Petitioner also explained that he did not know when to start counting the 14 days and that this post-sentencing conversation was the first time Mr. Acton had told him anything about the appellate process. **Tr. 89:15–90:6**. Petitioner also confirmed that he never asked Mr. Acton when to start counting the 14 days. **Tr. 120:19–21**. According to Petitioner, in the post-sentencing conversation with Mr. Acton, Mr. Acton told him that Mr. Acton, the prosecutor, and the sentencing judge "had made an agreement that [Petitioner] was going to file an appeal." **Tr. 111:19–112:7.**

On cross examination, Petitioner described hearing about his right to appeal from the judge but acknowledged that he never saw any documents reflecting an agreement about appeals. **Tr. 113:18–114:12.** Petitioner testified that he wanted to appeal because Mr. Acton "didn't help [him] at all" and because of the length of his sentence. **Tr. 107:8–108:1**. Petitioner later amended that statement, stating that he only wanted to appeal Acton's lack of advocacy and not the length of his sentence. **Tr. 132:12–23**. Specifically, Petitioner felt Mr. Acton did nothing to help him (1) because the sentencing judge asked Acton if he had anything to say on Petitioner's behalf and Acton said no; and (2) because Acton did not provide him with any documents. **Tr. 133:22–135:4**.

On January 14, 2025, the Court ordered supplemental briefing on the issues argued and the evidence put forth at the evidentiary hearing. **Doc. 39.** The Government and Petitioner filed their supplemental briefs on February 20, 2025. **Docs. 42–43.** The Court issued its PFRD on March 14, 2025. Petitioner's new attorney filed objections on April 17, 2025 and the Government responded on May 1, 2025.

Petitioner characterizes the PFRD as "riddled with misleading statements, omissions of important undisputed facts, and long logical leaps." **Doc. 47 at 2**. The Government argues that

6

Petitioner has not properly contested the PFRD's finding that Petitioner was not credible, that Mr. Acton reasonably consulted Petitioner about an appeal, and that Mr. Acton made reasonable efforts to discover Petitioner's wishes with respect to an appeal. **Doc. 48**. The Court considers Petitioner's motion, the associated briefing, the transcript from the evidentiary hearing, and the PFRD below.

## LEGAL STANDARD

Under 28 U.S.C. § 636(b)(1)(C), the Court conducts a *de novo* review of any objections to the Magistrate Judge's PFRD. To resolve an objection to the PFRD, the Court "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996). "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.* at 1059 (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)). Issues raised for the first time in an objection to the PFRD are deemed waived. *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996).

## ANALYSIS

An individual claiming that their sentence "was imposed in violation of the Constitution or laws of the United States" may move a court to vacate, set aside, or correct a sentence by filing a petition under 28 U.S.C. § 2255(a). To obtain habeas relief under Section 2255, a petitioner must demonstrate that there was an error that "had a substantial and injurious effect or influence in

7

determining the verdict." *Patton v. Mullin*, 425 F.3d 788, 800 (10th Cir. 2005) (citing *Brecht v. Abrahamson,* 507 U.S. 619, 623 (1993). In other words, this requires "prejudice of a constitutional magnitude." *Espinosa v. Williams*, 132 F.3d 42 (10th Cir. 1997) (unpublished). A court must hold an evidentiary hearing on a Section 2255 petition unless the motions, files, and records conclusively show that the prisoner is not entitled to any relief. 28 U.S.C. § 2255(b).

Here, the purported error of constitutional magnitude is Mr. Acton's alleged ineffective assistance as Petitioner's counsel during his criminal proceedings. Petitioner alleges that Mr. Acton's failure to file an appeal despite his apparent requests amounts to constitutional error. Mr. Acton's actions could amount to constitutional error where he (1) failed to file an appeal despite his client's requests or (2) should have known his client wanted to file an appeal. Finally, even if there was a constitutional error, that error must have been prejudicial to the client. The Court considers each question below in turn.

I. **The *Strickland* standard for ineffective assistance of counsel claims.**

The Sixth Amendment recognizes that criminal defendants have a right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970). A criminal defendant receives ineffective assistance of counsel when the counsel's representation has fallen "below an objective standard of reasonableness" considering all the factual circumstances. *Strickland*, 466 U.S. at 688. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* 689. This is because there is a strong presumption that counsel's conduct "falls within the wide range of reasonable professional assistance" that might simply be "sound trial strategy." *Id.* "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690.

8

Thus, an ineffective assistance of counsel inquiry takes place in two parts. First, *Strickland* instructs that the Court must inquire as to whether an error by counsel was professionally unreasonable. *Id.* at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, if the Court finds that there was constitutionally deficient performance, that performance must have prejudiced the defense. *Id.* A defendant must affirmatively demonstrate that there was an adverse effect on the defense and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 693–94.

*Strickland*'s two-party inquiry extends to a counsel's alleged failure to file a notice of appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). *Flores-Ortega* creates several sub-steps for part one of the *Strickland* test. First, the Court must inquire as to whether a criminal defendant instructed their attorney to file an appeal. If counsel ignored an affirmative request to file a notice of appeal, that action is professionally unreasonable, and the Court proceeds to the second step. *Id.*

On the other hand, where there was no request for an appeal, the Court's first-step inquiry proceeds in three parts. First, the Court must ask whether counsel consulted with the defendant about an appeal. *United States v. DeWald*, 822 F. App'x 768, 772 (10th Cir. 2020). If the Court finds that defense counsel consulted with their client about an appeal, counsel performs unreasonably only where they have disregarded express instructions. *Id.* If counsel did not consult with their client about an appeal, the Court inquires as to whether there was a duty to consult in the first place. *Id.*

Counsel has a duty to consult with the client about an appeal "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that [they were] interested in appealing." *Id.* (internal citations omitted). "The failure to consult under either of those scenarios constitutes deficient performance." *United States v. Herring*, 935 F.3d 1102, 1108 (10th Cir. 2019). In determining whether a duty to consult existed, "courts must look at the totality of the circumstances," considering "all the information counsel knew or should have known." *DeWald*, 822 F. App'x at 772 (citing *Flores-Ortega*, 528 U.S. at 480). This includes whether there was a guilty plea, whether the defendant received the sentence they bargained for, and whether a plea agreement had waived some or all the rights to appeal. *Id.* If counsel failed to consult where they had a duty to do so, that failure is professionally deficient and requires the Court to move onto the second step of the *Strickland* inquiry.

*Flores-Ortega* also defines prejudice in the context of counsel's failure to file a notice of appeal. Specifically, a criminal defendant satisfies the second prong of *Strickland* (and by extension, *Flores-Ortega*) if they demonstrate that "that there is a reasonable probability that, but for counsel's deficient failure to consult with [them] about an appeal, [they] would have timely appealed." *Flores-Ortega*, 528 U.S. at 484.

## II. Mr. Acton's representation was not constitutionally deficient.

Petitioner's motion alleges two claims in line with the two kinds of inquiries of the first prong of the *Strickland/Flores-Ortega* test. First, Petitioner alleges that Mr. Acton failed to file an appeal despite his request. **Doc. 1 at 12**. Second, Petitioner alleges that Mr. Acton failed to consult with him on the merits of an appeal. ***Id.* at 13**. Because a failure to abide by Petitioner's request for an appeal would dispose of the first factor, the Court considers that first below.

### A. There was no clear outright instruction to file an appeal.

It is not clear based on the record that Petitioner instructed Mr. Acton to file an appeal. As the PFRD points out, Petitioner, in his petition, his briefs in support, and his testimony at the evidentiary hearing, makes two contradictory claims: that he told Acton he wanted to appeal and that he never indicated whether he wanted to appeal.

On the one hand, Petitioner's petition states that he "requested to his counsel that he wanted to appeal his conviction" **Doc. 1 at 12 ¶ 1**, and that counsel "never consulted" with him. *Id.* **at 4 ¶ 12(a))**. His memorandum in support of his petition states that after sentencing, he advised counsel that he wanted to file an appeal. *Id.* **at 12–13 ¶¶ 1, 3; 17.** Petitioner also testified at the evidentiary hearing that he told Mr. Acton that he wanted to appeal. **44-1 at Tr. 86:15–86:16**.

However, as the Government rightly points out, Petitioner has repeatedly contradicted the claim that Mr. Acton disregarded his instruction to file an appeal because Petitioner also asserts that Mr. Acton did not consult with him about an appeal. **Doc. 11 at 9–10.** Following appointment of new counsel, Petitioner stated that he "never had a reasonable opportunity to discuss his appeal with [counsel] or communicate with him about it." **Doc. 24 at 9.** This would suggest that Petitioner's claim that he instructed Mr. Acton to file an appeal is not credible. It is logically incoherent that Petitioner would claim that he both instructed his counsel to file an appeal and was not able to consult with his counsel about an appeal. At the very least, as the PFRD points out, it calls into question Petitioner's credibility regarding this assertion.

Mr. Acton also testified that Petitioner did not inform him that he wanted to appeal his sentence. **Doc. 44-1 at Tr. 17:18 –17:24**. The Court finds this statement to be credible considering Petitioner's continually conflicting testimony and briefings. *Strickland* counsels that "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made

11

all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. Given this generous presumption, the Court will find that Petitioner did not direct Mr. Acton to file an appeal and proceed to the second step of a *Flores-Ortega* inquiry.

B.  *Mr. Acton reasonably consulted Petitioner about his appeal.*

Because Petitioner did not clearly demonstrate that Mr. Acton disregarded a direct instruction to file an appeal, the Court's inquiry proceeds in two sub-parts. First, the Court must consider whether Mr. Acton consulted with his client about an appeal.

"Because the decision to appeal rests with the defendant, . . . the better practice is for counsel routinely to consult with the defendant regarding the possibility of an appeal." *Flores-Ortega*, 528 U.S. at 479. If counsel does consult with a defendant about an appeal, then "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Dewald*, 822 F. App'x at 772. The Tenth Circuit employs the term "consult" to "convey a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *United States v. Ennis*, 528 F. App'x 874, 878 (10th Cir. 2013).

Petitioner argues that Mr. Acton did not advise him about the advantages and disadvantages of taking an appeal. **Doc. 48 at 5, 8**. The Government argues that Mr. Acton acted reasonably when he conveyed his opinion that he "didn't think there was any kind of meritorious grounds for appeal." **Doc. 11-1 at Tr. 20:20-22**. It is true that this is one disadvantage of pursuing an appeal. And Petitioner himself conceded in his motion that Mr. Acton said that an appeal would be a waste of time, suggesting that Mr. Acton conveyed that there would be no merit to an appeal. **Doc. 1**. This demonstrates that Mr. Acton did at least minimally consult with Petitioner, a finding sufficient to surmount *Strickland*'s low bar of a presumption of reasonableness. 466 U.S. at 690.

12

The question about whether Mr. Acton made reasonable efforts to discover Petitioner's wishes is less clear. Mr. Acton testified that he advised Petitioner that he had a right to an appeal. **Doc. 11-1 at Tr. 52:15—52:18.** However, Mr. Acton requested Petitioner instruct him to file that notice. *Id*. Mr. Acton testified Petitioner did not respond to him at all during the discussion about the appeal, *id.* **at Tr. 53:7–53:8.** Mr. Acton did not reach out to Petitioner about his interest in filing an appeal. *Id.* **at Tr. 55:17–55:21**. However, the Tenth Circuit has held that "counsel adequately consulted by explaining the advantages and disadvantages of an appeal, offering to file that appeal, and, when he received no response, asking if [the client] had any further questions." *United States v. Reyes-Espinoza*, 754 F. App'x 752, 755 (10th Cir. 2018). Mr. Acton "was not required to demand a response from [Petitioner] or to phrase his offer as a yes-or-no question." *Id.* The Court finds Mr. Acton's testimony that Petitioner did not respond to him or tell him that he was interested in filing an appeal to be credible. Tenth Circuit precedent thus counsels towards finding Mr. Acton adequately consulted with Petitioner.

Mr. Acton acted inadvisedly in his representation of Petitioner where he made no effort to follow up with his client and made only bareboned assertions about some of the negatives of an appeal. However, *Strickland* imposes an exceptionally forgiving standard. The Court will therefore find that Mr. Acton did consult with Petitioner.

> C. *Mr. Acton did not have a constitutionally mandated duty to consult Petitioner about his appeal.*

Even if Mr. Acton did not consult with Petitioner, Mr. Acton did not fail to fulfill a constitutionally mandated duty to consult his client. The Tenth Circuit will find a constitutionally mandated duty to consult about an appeal where the defendant reasonably demonstrated an interest in appealing or where a rational defendant in the client's position would want to appeal. The Court considers each in turn and finds that neither scenario gives rise to a constitutionally mandated duty.

> *i. Petitioner did not reasonably demonstrate that he was interested in appealing*

Petitioner did not reasonably demonstrate that he was interested in appealing such that it would give rise to a constitutionally mandated duty to consult.

Mr. Acton's actions were ill-advised and at times disappointing. However, the fact remains that Petitioner expressed no interest in pursuing an appeal. **Doc. 44-1 at Tr. 56:5–56:15**. Petitioner made no effort to contact Mr. Acton, and he repeatedly made contradictory statements about whether he wanted to file an appeal. **Doc. 1 at 12 ¶ 1**; **Doc. 44-1 at Tr. 86:15–86:16**; **Doc. 24 at 9.** Just as Petitioner's claims that he instructed Mr. Acton to file an appeal are thus questionable, any claims about reasonable efforts to demonstrate a desire to appeal are similarly questionable. After "reviewing the record, [] there was no time during the change of plea hearing or the sentencing hearing that Petitioner indicated any desire to pursue an appeal in this case." *Ennis*, 528 F. App'x at 879. This complete lack of affirmative evidence, combined with Petitioner's decision not to "contact his counsel regarding an appeal for several months after sentencing," seems to indicate that Petitioner made little effort to demonstrate a desire to appeal. Given that Petitioner pled guilty and received the minimum sentence, Mr. Acton could not have known or inferred that Petitioner wanted to suddenly appeal. *United States v. Kelley*, 318 F. App'x 682, 687 (10th Cir. 2009) (Finding that "there was no reason, at the time of sentencing, for [defense counsel] to think ... that a rational defendant would want to appeal" where a defendant received a guideline sentence. (internal quotations omitted)).

Presuming that Mr. Action acted in a professionally reasonable capacity, the Court must conclude that Petitioner did not reasonably demonstrate his desire to appeal. *See Strickland*, 466 U.S. at 690.

> *ii. A rational defendant would not want to appeal Petitioner's sentence.*

A constitutionally mandated duty to consult about an appeal also arises where a rational defendant would want to appeal. However, there are no circumstances in the record demonstrating that a rational defendant would have wanted to appeal the sentence.

Here, Petitioner's sentence followed a guilty plea, and he received the mandatory minimum, which the Court explained to him at his change of plea hearing. *United States v. Seamster*, No. 22-4003, 2022 WL 2092627, at *4, n.6 (10th Cir. June 10, 2022). He "advised the court that he had adequate opportunity to confer with counsel" and indeed had the chance to do so during the hearing. *Id.* Petitioner has demonstrated no issue with the plea colloquy that would become a nonfrivolous ground for appeal. *Ennis*, 528 F. App'x at 879.

Nor has Petitioner demonstrated any issue with the mandatory minimums that would warrant an appeal. Indeed, "a knowing and voluntary guilty plea to an indictment which includes a mandatory-minimum-inducing drug-quantity element subjects a defendant to that mandatory minimum sentence." *United States v. Roe*, 913 F.3d 1285, 1294 (10th Cir. 2019) (collecting cases). Petitioner testified that he understood the mandatory minimums and accepted them when he pled guilty to the indictment. **Doc. 11-1 at Tr. 21:5–22:5** (official transcript for Petitioner's change of plea hearing); *id.* **at Tr. 23:11–24:3.** He received the lowest possible sentence, which along with his guilty plea, indicates an intent not to appeal. *Flores-Ortega*, 528 U.S. at 480 ("[A] highly relevant factor in this inquiry will be whether the conviction follows a . . . guilty plea, [] because a guilty plea . . . may indicate that the defendant seeks an end to judicial proceedings.").

The record likewise counsels towards finding that a rational defendant would not have wanted to appeal Petitioner's sentence, meaning Mr. Acton was not under a constitutional duty to consult with Petitioner.

15

### III. Petitioner has not demonstrated prejudice mandating vacating his sentence.

Even if Mr. Acton's actions were unconstitutionally unreasonable, Petitioner's case also fails the second *Strickland* prong: whether he was prejudiced by Mr. Acton's alleged failures. The Court finds that Petitioner has failed to make such a showing.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To satisfy the second prong of *Strickland*, a defendant "must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with [them] about an appeal, [they] would have timely appealed." *Flores-Ortega*, 528 U.S. at 484. A court "must take into account all the information counsel knew or should have known." *Id.* at 480. Particularly important for a court's consideration is "whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id*. "Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.*

Petitioner has not demonstrated that but for Mr. Acton's alleged failure to consult him about an appeal he would have appealed his sentence. This is particularly clear when one considers his guilty plea and the circumstances surrounding the guilty plea.

Petitioner objects to the length of his sentence, and it is understandable that he would be unhappy with a fifteen-year sentence. *C.f. United States v. Orozco-Sanchez*, 804 F. App'x 952, 962 (10th Cir. 2020) ("Given his original understanding that he would serve no more than 37

16

months, Mr. Orozco understandably was unhappy with a 72-month sentence."). However, Petitioner received the benefit of his plea: he was sentenced to the absolute mandatory minimum he could receive without a plea bargain of some kind. *C.f. Dewald*, 822 F. App'x at 775 ("But the district court did not impose the maximum sentence; it sentenced him within his guidelines range . . . . DeWald received the benefit of his plea."). At his change of plea hearing, Petitioner confirmed that he understood that the statutory minimum he faced was 180 months, or fifteen years. **Doc. 11-1 at Tr. 21:5–22:5** (official transcript for Petitioner's change of plea hearing); *id.* **at Tr. 23:11–24:3** (indicating that he understood that he recognized that the five-year mandatory minimum for count 6 was to run consecutively to the ten-year mandatory minimum for the drug charges). Nor did the Court impose some sort of upward departure, as Petitioner claimed. **Doc. 1**; *Dewald*, 822 F. App'x at 775. Petitioner testified under oath at his change of plea hearing that he knew the mandatory minimums he faced and proceeded with his guilty plea. This suggests that Petitioner received the sentence for which he bargained and would not be likely to appeal. *United States v. Benoit*, 274 F. App'x 689, 692 (10th Cir. 2008).

Moreover, Petitioner demonstrated a continued desire to accept culpability and move on to the end of the proceedings, counseling heavily against finding prejudice. Petitioner repeatedly admitted he was guilty. *Dewald*, 822 F. App'x at 775. He asserted at his change of plea hearing that he "wanted to advance [his] case to get it moving forward" and that he wants to "restart [his] life." **Doc. 11-1 at Tr. 5:4–5:7;** *id.* **at Tr. 12:21**. He also testified that he "committed a crime and [knows] that [he has] to pay for it but [he] just want[s] to . . . follow a good road." *Id.* **at Tr. 12:19–12:24.** Not only did these statements take place at a change of plea hearing, but they seem to outright confirm that defendant is more interested in ending judicial proceedings and atoning for his crimes than he is with appealing his sentence. *Flores-Ortega*, 528 U.S. at 480 ("[A] highly

17

relevant factor in this inquiry will be whether the conviction follows a . . . guilty plea, [] because a guilty plea . . . may indicate that the defendant seeks an end to judicial proceedings."). In reviewing the record of the change of plea hearing and the sentencing hearing, there is nothing in the record that would have "indicated any desire to pursue an appeal in this case. *United States v. Ennis*, 528 F. App'x 874, 879 (10th Cir. 2013).

Finally, Petitioner made little to no effort to contact his defense counsel, despite admitting that he knew that he only had fourteen days to file. "Decisions such as whether to plead guilty, whether to seek to withdraw that plea, and whether to appeal if unsuccessful rest with the defendant." *Bonney v. Wilson*, 754 F.3d 872, 883 (10th Cir. 2014). And the Tenth Circuit has considered a defendant's failure to contact his counsel to be indicative of a lack of desire to pursue an appeal. *Ennis*, 528 F. App'x at 879. Petitioner has demonstrated that he can contact both his attorney and the Court based on his filings, meaning there is nothing in the record to indicate that Petitioner was otherwise precluded from seeking to discuss an appeal. This similarly counsels towards finding that the record does not demonstrate that but for Mr. Acton's allegedly deficient representation, Petitioner would have timely appealed.

The Court finds that there is nothing in the record to support finding that Petitioner has been prejudiced by Mr. Acton's potentially deficient actions. Petitioner has failed to identify any non-frivolous grounds for appeal. *DeWald*, 822 F. App'x at 775 ("With all this said, in our view, the deciding factor here is that all of DeWald's proposed appellate arguments are frivolous."). Petitioner therefore fails the second prong of *Strickland*.

**IV.   The Court will deny a certificate of appealability.**

Habeas Corpus Rule 11 provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability

18

requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The "petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The Court determines that Petitioner failed to make a substantial showing that he has been denied a constitutional right. Therefore, the Court will deny a certificate of appealability. *Hahn v. United States*, No. 21-CV-0880 KWR/DLM, 2025 WL 1135067, at *18 (D.N.M. Apr. 17, 2025).

## CONCLUSION

For the reasons above, Petitioner's Objections to the PFRD are **OVERRULED**. The Court adopts Judge Martinez's PFRD in its entirety. The Court denies Petitioner's Motion under § 2255 (Doc. 1).

**IT IS THEREFORE ORDERED** as follows:

1. Petitioner's Objections to the PFRD (**Doc. 47**) are **OVERRULED**;

2. Judge Martínez's Proposed Findings and Recommended Disposition (**Doc. 44**) is **ADOPTED** as an Order of the Court;

3. The Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence or Judgment by a Person in Federal Custody (**Doc. 1**) is **DENIED**.

4. That a certificate of appealability is **DENIED**.

/S/
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE